# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) RICHARD ANDERSON, individually and on behalf of all others similarly situated;

(2) LONNETTE HAY, as legal guardian of Trevor Hay And Taren Hay, individually and on behalf of all others similarly situated;

(3) JANIS HARRIS, as legal guardian of Rhonda Cassell, individually and on behalf of all others similarly situated;

(4) LANCE AND SHERRY DAVIS, as legal guardians of Tomas Matthew Davis, individually and on behalf of all others similarly situated; and

(5) LORI TAYLOR, individually and on behalf of all others similarly situated.

    Plaintiffs

    v.

(1) ED LAKE, in his official capacity as DIRECTOR, OKLAHOMA DEPARTMENT OF HUMAN SERVICES,

(2) BECKY PASTERNIK-IKARD, in her official capacity as CHIEF EXECUTIVE OFFICER, OKLAHOMA HEALTH CARE AUTHORITY

    Defendants.

**Case No.  CIV-17-1236-HE**

**Class Action Complaint**

## <u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

Plaintiffs bring this action on behalf of themselves, and all others similarly situated, and those individuals they seek to represent ("Putative Class Members"), by and through their undersigned counsel of record, and for their Complaint against the above-named Defendants, state as follows:

### INTRODUCTION

1. This is an action brought by seniors and adults with disabilities, all residents of the State of Oklahoma, who are current recipients of the Medicaid ADvantage Waiver or the Medicaid In-Home Supports Waiver for Adults, who have received notice from Defendant Lake's agency, the Department of Human Services (DHS), that their waiver services will be terminated effective December 1, 2017, and who are at serious risk of institutionalization as a result of the arbitrary decision to terminate waiver services solely for economic reasons.[1]

2. Defendant Lake's arbitrary termination of waiver services without assessing for and providing alternative services places Plaintiffs at serious risk of institutionalization.

3. Plaintiffs who receive the ADvantage waiver are either "frail elderly persons" or are adults over the age of 21 who have a physical disability. Plaintiffs receiving

---

[1] Letter from Karen Poteet, Interim Director, Aging Services, Oklahoma Department of Human Services, to ADvantage Member, (Oct. 31, 2017) (attached as Exhibit 1) and Letter from Marie Moore, Interim Director, Developmental Disabilities Services, Oklahoma Department of Human Services, to In-Home Supports Waiver for Adults Recipients, (Oct. 31, 2017) (attached as Exhibit 2).

the ADvantage waiver are individuals requiring a nursing home level of care, as determined by nursing staff of the aging services division of DHS[2], who receive services, such as skilled nursing, personal care, home-delivered meals, and therapeutic services, through the ADvantage waiver to remain in a community-based living setting, either in their own home, or in the home of a family member, instead of in an institution such as a nursing home.[3]

4. Plaintiffs who receive the In-Home Supports waiver for adults are individuals over age 18 who have developmental disabilities and receive waiver services, such as nutrition services, nursing care, therapeutic services, and physical home modifications (such as a ramp or roll-in shower) in order to remain in a community-based living setting, either in their own home, or the home of a family member, instead of in an institution.[4]

5. As a result of Defendant Lake's actions, Plaintiffs and thousands of putative class members are at serious risk for institutionalization.[5] DHS itself has estimated that at least 10,000 individuals who will lose waiver services could be forced to live in institutions, including nursing homes.[6]

---

[2] http://www.okhca.org/individuals.aspx?id=8143
[3] http://www.okhca.org/individuals.aspx?id=8143
[4] http://www.okhca.org/individuals.aspx?id=8149
[5] http://newsok.com/without-a-deal-10000-people-could-be-forced-into-nursing-homes/article/5569386
[6] http://www.okdhs.org/OKDHS%20PDF%20Library/Office%20of%20Communications/DHSBudgetWorkProgramfor$69MLossofFunding_ocom_10252017.pdf

## JURISDICTION AND VENUE

6. This is an action for declaratory and injunctive relief for violation of Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12132 and Section 504 of the Rehabilitation Act of 1973 (Section 504), (29 U.S.C. § 794).

7. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1342 for a violation of Title II of the ADA, and Section 504. Plaintiffs' claims for declaratory and injunctive relief are authorized under 28 U.S.C. §§ 2201 - 2202.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b). Defendant Ed Lake is sued in his official capacity, and his official place of business is located within Oklahoma County, in the Western District of Oklahoma.

9. Defendant Becky Pasternik-Ikard is sued in her official capacity, and her official place of business is located within Oklahoma County, in the Western District of Oklahoma.

## PARTIES

**Plaintiffs**

*Plaintiff Richard Anderson*

10. Plaintiff Richard Anderson is a 49 year old person with physical disabilities residing in Norman, Oklahoma.

11. Plaintiff Anderson has an active community life. He is one of the founding members of Oklahoma ADAPT. He is a songwriter, enjoys computers and

technology, and has lived independently in the same apartment complex for almost 32 years.

12. Plaintiff Anderson is diagnosed with cerebral palsy. Plaintiff is unable to walk and utilizes the assistance of an electric wheelchair.

13. Plaintiff Anderson is unable to bathe, brush his teeth or groom independently, and is unable to cook or prepare his own meals.

14. Plaintiff Anderson receives the services of the Medicaid ADvantage Waiver Program including the assistance of a home health aide, specialized adaptive equipment, and a Life Alert to perform his daily life activities.

15. Plaintiff Anderson live alones and does not have a caretaker. Plaintiff does not have any family support. As such, the aide provided to him by the ADvantage Waiver Program is critical.

16. Plaintiff Anderson receives 19.5 hours of personal care from a home health aide each week. Plaintiff Anderson's home health aide assists him every day with his personal needs, such as bathing, grooming, housework, and preparing meals.

17. Plaintiff Anderson learned of the elimination of his ADvantage Waiver in November 2017 when he received a letter from OKDHS which provided no alternative sources of care.

18. Because this program is essential to his care, Plaintiff Anderson will be at risk of being forced into a nursing home or other institutional facility, or of imminent death, if his services are terminated.

19. Plaintiff Anderson does not want to be forced to live in a nursing home. He wants to remain living at his home where he can maintain an active community life.

*Plaintiff Trevor Hay (through his  Legal Guardian Lonnette Hay)*

20. Plaintiff Trevor Hay is a 21 year old person with developmental disabilities, including autism, attention deficit hyperactivity disorder, and connective tissue syndrome. Plaintiff Trevor Hay lives in Tulsa, Oklahoma.

21. Plaintiff Trevor Hay resides with his mother, who is his sole caretaker and legal guardian, Lonnette Hay, and his twin sister, Taren Hay.

22. Plaintiff Trevor Hay functions at the level of a 5 year old, according to test results. He requires the level of care provided in an Intermediate Care Facility for Individuals with Intellectual Disabilities (ICF/IID). He requires assistance with all activities of daily living, including bathing, dressing, and toileting. Plaintiff Trevor Hay's food must be prepared for him and he must be monitored while eating.

23. Plaintiff Trevor Hay's speech is unintelligible.

24. Plaintiff Trevor Hay cannot be left without supervision.

25. Plaintiff Trevor Hay receives medical care and support from Oklahoma's Medicaid In-Home Supports for Adults Waiver.

26. Plaintiff Trevor Hay receives 20 hours per week of in-home Habilitation Training Specialist (HTS) services. He also receives 17.5 hours per week of out of the home supervised vocational employment services.

27. Without 37.5 hours per week of care, Plaintiff Trevor Hay will be forced to be placed in a nursing home or other institution.

28. Plaintiff Trevor Hay's mother was diagnosed with breast cancer in 2017, has had a mastectomy, completed chemotherapy, and will undergo reconstruction surgery on November 29, 2017. Plaintiff Trevor Hay's grandmother will be caring for Plaintiff Trevor Hay during his mother's recovery, but will not be able to do so without the additional services provided by the IHS waiver.

29. Plaintiff's mother learned of the elimination of the IHS Waiver in November 2017 when she received a letter from OKDHS. The letter did not provide alternative sources of care for Trevor. Trevor was not offered Medicaid Home Health Care, or the Community Waiver as potential alternative care. Due to his high level of need, Trevor will be forced to be institutionalized in an ICF, nursing home or other facility.

30. Plaintiff Trevor Hay does not want to live in an institutional setting; he wants to live at home with his mother and sister, Taren Hay.

*Plaintiff Taren Hay (through her Legal Guardian Lonnette Hay)*

31. Plaintiff Taren Hay is a 21 year old person with developmental disabilities, including autism, attention deficit hyperactivity disorder, and connective tissue syndrome. Plaintiff Taren Hay lives in Tulsa, Oklahoma.

32. Plaintiff Taren Hay resides with her mother, who is her sole caretaker and legal guardian, Lonnette Hay, and her twin brother, Trevor Hay.

33. Plaintiff Taren Hay functions at the level of a 5 year old, according to test results. She requires the level of care provided in an Intermediate Care Facility for Individuals with Intellectual Disabilities (ICF/IID). She requires assistance with all activities of daily living, including bathing, dressing, and toileting. Plaintiff Taren Hay's food must be prepared for her and she must be monitored while eating.

34. Plaintiff Taren Hay's speech is often unintelligible.

35. Plaintiff Taren Hay cannot be left without supervision.

36. Plaintiff Taren Hay receives medical care and support from Oklahoma's Medicaid In-Home Supports for Adults Waiver.

37. Plaintiff Taren Hay receives 20 hours per week of in-home Habilitation Training Specialist (HTS) services. She also receives 17.5 hours per week of out of the home supervised vocational employment services.

38. Without 37.5 hours per week of care, Plaintiff Taren Hay will be forced to be placed in a nursing home or other institution.

39. Plaintiff Taren Hay's mother was diagnosed with breast cancer in 2017, has had a mastectomy, completed chemotherapy, and will undergo reconstruction surgery on November 29, 2017. Plaintiff Taren Hay's grandmother will be caring for Plaintiff Taren Hay while her mother recovers from surgery, but will not be able to do so without the additional services provided by the IHS waiver.

40. Plaintiff's mother learned of the elimination of the IHS Waiver in November 2017 when she received a letter from OKDHS. The letter did not provide alternative sources of care for Taren. Taren was not offered Medicaid Home Health Care, or the Community Waiver as potential alternative care. Due to her high level of need, Taren will be forced to be institutionalized in an ICF, nursing home or other facility.

41. Plaintiff Taren Hay does not want to live in an institutional setting; she wants to live at home with her mother and brother, Trevor Hay.

*Plaintiff Tomas Matthew Davis (through his Legal Guardians, Lance and Sherry Davis)*

42. Plaintiff Tomas Matthew Davis is a 26 year old individual with disabilities residing in Noble, Oklahoma. Plaintiff Davis lives with his parents, Lance and Sherry Davis, who are his legal guardians.

43. Plaintiff Davis has diagnoses of Cerebral Palsy, Intellectual Disability, Epilepsy with Grand Mal seizures, Schizophrenia, and Acute Asthma. He functions at about the level of a 7-year-old, according to testing. His disabilities require that he

receive total care. He cannot walk, stand, or sit unassisted. He uses an electric wheelchair; however, Tomas can only operate his wheelchair unassisted for very short distances.

44. Plaintiff Davis is unable to bathe or dress himself. Tomas requires assistance for all transfers to and from his wheelchair, including in and out of bed. Precautions such as frequent repositioning must be taken to avoid pressure sores. His food must be cooked for him, cut into small pieces, and his eating monitored as he chokes easily.

45. Plaintiff Davis is unable to administer his own medications or take himself to doctor appointments. He requires assistance for all aspects of toileting.

46. Tomas has issues with memory recall and has difficulty retaining information; he often cannot remember people that he doesn't see on a daily basis even though he has known the person for years.

47. Tomas currently takes nine different prescription medications daily along with several over-the-counter medications also recommended by his doctor, such as stool softeners and allergy medications.

48. DHS administers the Oklahoma In Home Supports Waiver (IHS Waiver). To be eligible for IHS Waiver, DHS determined that Tomas requires the level of care that is provided in an Intermediate Care Facility for Individuals with Intellectual Disabilities (ICF/IID). Instead of going to an ICF, he lives at home and receives 16

hours per week of Habilitation Training Specialist Services (HTS) and 40 hours per week of Vocational Services through Oklahoma's IHS Waiver program. In addition, Tomas receives 29 hours per week of personal care assistance and one additional hour of personal care each weekend for laundry.

49. The IHS Waiver also allows Tomas' nine prescription medications to be paid for by Medicaid. Without the IHS waiver, Oklahoma Medicaid limits prescription coverage for adults to six prescriptions per month. Without the additional coverage, Plaintiff's parents cannot afford Tomas's nine medications.

50. Plaintiff Davis's parents were notified by DHS that Tomas's IHS Waiver Vocational Services will be terminated on December 1, 2017. In addition, Plaintiff Davis's parents were notified that Tomas's Personal Care Services will be terminated. This means that all Tomas's DHS services will be terminated.

51. Plaintiff Davis's parents were informed of the elimination of the IHS Waiver in November 2017, when they received a letter from OKDHS. The letter did not provide alternative sources of care for Tomas. He was not offered the Community Waiver as potential alternative care.

52. Without the IHS Waiver for Tomas, Tomas's parents will be forced to place Tomas in an ICF.

53. When assessed for the IHS Waiver, OKDHS determined the 16 hours a week of HTS services, 29 hours per week of personal care services and 40 Vocational

Employment hours are the services Tomas needs in order to have his medical needs met at home, rather than in an institution.

54. Tomas's HTS works two hours each morning, seven days per week getting Tomas out of bed, assisting him with toileting, personal hygiene, meal preparation and breakfast, dressing and getting ready for his vocational center. His HTS also works two hours each evening, seven days per week assisting him with meal time, personal hygiene, bathing, and getting Tomas ready for and into bed. The IHS Waiver also provides Tomas 40 hours per week vocational employment services through Oklahoma's IHS Waiver. These are small group vocational services where he receives a high level of support with a 1 to 5 staff ratio.

55. Without the 85 hours of care per week, Plaintiff Davis's parents will be forced to be place Tomas in a nursing home or other institution. Plaintiff Davis's parents want him to remain in their home and receive services there. Tomas also wishes to remain in his home, with his family and people who are familiar to him.

56. Plaintiff Davis's parents both work full-time jobs outside of the home and are unable to provide Tomas the care he requires due to their work demands. Plaintiff Davis's parents must continue working as without both their incomes they would no longer be able to afford their house payment and they would lose their home, which means Tomas losing his home as well.

57. Plaintiff Davis's parents have both sustained physical injury from years of lifting Tomas and can no longer provide the level of care he needs without the assistance of paid staff, an expense they cannot afford to pay themselves.

58. Notice of the termination of the IHS has interfered already with Plaintiff Davis's care. It has led to several of Tomas's personal care staff quitting in anticipation of needing to find other employment.

59. Plaintiff's parents believe this change in routine and uncertainty has contributed to, if not caused, an increase in Tomas' seizures, including a Grand Mal seizure on November 14, 2017.

*Plaintiff Rhonda Cassell (through Legal Guardian Janis Harris)*

60. Plaintiff Rhonda Cassell is a 43 year old individual who lives with her mother and legal guardian, Janis Harris, in Durant, Oklahoma.

61. Plaintiff Cassell has been diagnosed with Traumatic Brain Injury (TBI), Seizure Disorder and double vision.

62. Plaintiff Cassell's TBI occurred at age 7 when she was hit by a car and was comatose for three months and was not expected to survive. She is paralyzed on the left side. Rhonda is highly susceptible to falls due to her paralysis and double vision. She uses a wheelchair most of the time as she can only walk very short distances with assistance. If there is no handrail, she requires physical support with walking. She requires assistance getting in and out of vehicles.

63. Plaintiff Cassell requires assistance and supervision anytime she goes out in the community. She cannot be by herself as she is susceptible to being taken advantage of by others, is impulsive, frequently falls, and is unaware of danger. She will give her money away to family members.

64. Plaintiff Cassell requires assistance with bathing and dressing. She is incontinent and wears briefs. She has frequent "accidents" and soils her clothes. When she has accidents, her caregivers must change and wash her clothing and clean her body. She cannot cook and her food must be cut up to prevent choking.

65. Plaintiff Cassell receives medical care through Oklahoma's Medicaid In Home Supports Waiver.  Her In Home Supports Waiver will end December 1, 2017.

66. DHS administers the Oklahoma In Home Supports Waiver (IHS Waiver). To be eligible for the IHS Waiver, DHS determined that Rhonda requires the level of care that is provided in an Intermediate Care Facility for Individuals with Intellectual Disabilities (ICF/IID).

67. Instead of going to an ICF, Cassell lives at home and receives 28 hours per week of Habilitation Training Specialist Services (HTS) through Oklahoma's IHS Waiver program. She has been authorized to receive this amount of services for the past 20 years. Without these hours of care, she will be forced to be placed in a nursing home or other institution.

68. Plaintiff Cassell has an HTS who works 28 hours per week and takes care of all her needs. This HTS provides all of Rhonda's care during the 28 hours she works. The HTS bathes Rhonda, dresses her, and feeds her. The HTS also toilets and changes Rhonda's briefs throughout the day. The HTS assists her when she has toileting "accidents" by changing and washing her clothing and cleaning her body. The HTS monitors Rhonda to prevent and limit her frequent falls. She assists Rhonda anytime she goes into the community.

69. Plaintiff Cassell's mother provides care for Rhonda beyond the 28 hours her HTS provides. Because Rhonda requires 24-hour care, Cassell's mother must meet all of her needs beyond those of her HTS. The HTS services allows her mother to meet these additional care needs.

70. Cassell's mother has been diagnosed with Lupus, Osteoarthritis, and Congestive Heart Failure. Her health conditions makes it impossible to provide the additional care Rhonda needs on a daily basis if she loses her IHS Waiver services. Plaintiff's mother is unable to provide 24-hour care she requires and will place her in an institution if her IHS Waiver is eliminated.

71. Plaintiff's mother learned of the elimination of the IHS Waiver in November 2017 when she received a letter from OKDHS. The letter did not provide alternative sources of care for Rhonda. She was not offered Medicaid Home Health Care, or the Community Waiver as potential alternative care. Due to her high level of need,

Rhonda will be forced to be institutionalized in an ICF, nursing home or other facility.

72. Rhonda does not want to be forced to move to an institution. She has her own bedroom that she decorated. She enjoys living with her mother, visiting friends, and shopping. Plaintiff Cassell wants to stay in her home that she has lived in for many years.

*Plaintiff Lori Taylor*

73. Plaintiff Lori Taylor is a 52 year old person with physical disabilities residing in Norman, Oklahoma. Plaintiff Taylor enjoys creative projects, including photography, and has won photography competitions.

74. Plaintiff Taylor is an active community member, donating her time to serve on the Steering Committee for the City of Norman's ADA Transition Plan. She is also one of the founding members of Oklahoma ADAPT.

75. Plaintiff Taylor has cerebral palsy, and is unable to walk. Plaintiff uses the assistance of a wheelchair.

76. Plaintiff Taylor is able to brush her teeth, bathe, and use the restroom independently, but she is unable to groom herself or transport herself from her bed without   assistance.

77. Plaintiff Taylor receives services through the Medicaid ADvantage Waiver program. Such services include the assistance of a hospital bed, home health aide, specialized adaptive equipment, and a Life Alert.

78. Plaintiff Taylor has lived independently since she was 17 years old. Prior to receiving the ADvantage waiver services, Taylor's ex-husband was her caretaker.

79. Plaintiff Taylor now lives alone and does not have a caretaker. Plaintiff's closest family member, her mother, lives two hours away and does not have the physical ability to assist Plaintiff Taylor with her essential daily needs.

80. Plaintiff Taylor receives 17.75 hours of services from a home health aide, provided by the ADvantage program. The home health aide comes to Taylor's home daily to assist with her personal needs, such as bathing, physically getting out of bed, housework and cooking.

81. Without the help of the home health aide provided by the program, Taylor would not be able to physically get into or out of her bed. If Plaintiff is not in bed, and her aide does not come to assist her, she will be forced to sleep in her motorized wheelchair. Plaintiff then would be susceptible to infection in the form of swollen limbs and pressure sores.

82. Without her home health aide, Plaintiff Taylor also will not be able to groom herself or  perform daily self-care activities.

83. Plaintiff Taylor learned of the elimination of her ADvantage Waiver in November 2017 when she received a letter from DHS which provided no alternative sources of care.

84. Because the services provided through the ADvantage Waiver are essential to her care, Plaintiff Taylor will be forced into a nursing home or other institutional facility if her services are terminated.

85. Plaintiff Taylor does not want to live in a nursing home. Plaintiff Taylor wants to continue living in and serving her community through art and activism for people with disabilities.

**Defendants**

86. Defendant Becky Pasternik-Ikard is the Chief Executive Officer of Oklahoma Health Care Authority (OHCA). The OHCA is the single state agency for Medicaid administration. *See* 63 O.S. §§5000.24-5029.

87. Defendant Ed Lake is the Director of the Oklahoma State Department of Human Services (DHS). Acting under color of state law, Defendant Lake holds executive authority over the administration of the ADvantage Waiver and In-Home Supports Waiver programs since DHS is the entity responsible for administering the waiver programs once established by OHCA. *See* 56 O.S. § 1017.4.

**STATEMENT OF FACTS**

88. Title XIX of the Social Security Act establishes the federal-state Medicaid program. See 42 U.S.C. §§1396–1396w-5. The purpose of Medicaid is to furnish, as far as practicable, "medical assistance on behalf of . . . aged, blind or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services" and "to help such families and individuals to attain or retain capability for independence or self-care." 42 U.S.C. §1396-1.

89. Participation in the Medicaid program by states is voluntary. If a state elects to participate in the Medicaid program, it must "comply with detailed federally mandated standards." *Antrican v. Odom*, 290 F.3d 178, 183 n.2 (4th Cir. 2002). Participating states are reimbursed by the federal government for a majority of the costs of Medicaid benefits. *See* 42 U.S.C. § 1396b.

90. Participating states must designate a "single state agency" to administer the Medicaid program. 42 U.S.C. § 1396a(a)(5). Oklahoma has elected to participate in Medicaid, and the state has designated the Oklahoma Health Care Authority (OHCA) as its single state agency for administration. *See* 63 O.S. §§5000.24-5029.

91. While OHCA is the single state agency for administration of the State Medicaid program, DHS is the entity responsible for administering the waiver programs,

including the ADvantage Waiver and the In-Home Supports Waiver for Adults once established by OHCA.  *See* 56 O.S. § 1017.4.

92. Participation in Medicaid requires Oklahoma, and other participating states, to cover certain mandatory services. 42 U.S.C. §§ 1396a(a)(10), 1396d(a). In addition, a state may choose to provide certain optional services. Once a state chooses to provide an optional service, it must fully adhere to the applicable requirements of federal law and regulations. *See Lankford v. Sherman,* 451 F.3d 496, 504 (8th Cir. 2006).

93. Oklahoma has chosen to provide ADvantage Waiver and In-Home Supports Waivers for Adults programs for vulnerable Oklahomans. More than 20,000 individuals are served by these waivers and are now at serious risk of institutionalization as a result of Defendant Lake's arbitrary termination of the waivers.[7]

94. The ADvantage Waiver is a program for "frail elderly" persons and adults over the age of 21 who have a physical disability. Individuals are required to be evaluated and determined "nursing-home eligible" by nursing staff of DHS's Aging Services Division in order to participate in the program. Instead of living in a nursing home, however, recipients of the ADvantage waiver are able to live in their own home or

---

[7]http://www.okdhs.org/OKDHS%20PDF%20Library/Office%20of%20Communications/
DHSBudgetWorkProgramfor$69MLossofFunding_ocom_10252017.pdf

the home of a family member. The benefits of this program are manifold and include fiscal benefits to the state and quality of life benefits to the individual.

95. The In-Home Supports Waiver for Adults is a Medicaid program, operated within the larger "Home and Community Based Services Waivers" program offered by the State of Oklahoma for individuals over the age of 18 with an intellectual disability. *See* OAC 317:40-1-1. Recipients must meet the Institutional Care Facility for Individuals with Intellectual Disabilities (ICF/IID) Level of Care requirements per OAC 317:30-5-122.

96. Without the In-Home Supports Waiver for Adults, recipients would require placement in an institutional setting.[8] Instead of being forced to live in an institution, however, individual recipients of the In-Home Supports Waiver for Adults live in their own home, foster home, group home, or the home of a family member. The waiver provides necessary services, such as adaptive equipment, speech, physical, and occupational therapies, medical supplies, family training, and nursing services.

97. Defendant Lake's agency, DHS, has indicated its intent, through written notice to participants and providers, to arbitrarily terminate both the ADvantage Waiver and In-Home Supports Waiver for Adults programs effective December 1, 2017.

---

[8] http://www.okhca.org/individuals.aspx?id=8149

98. DHS's written 30-day notices of arbitrary termination provided no opportunity for participants to have a hearing or to appeal Defendant Lake's summary decision to terminate the programs in their entirety.

99. OHCA is required to provide institutional care for Medicaid recipients, including all waiver recipients at risk of institutionalization resulting from DHS's arbitrary termination of the waiver programs.

## CLASS ACTION ALLEGATIONS

100. This complaint is brought as a statewide class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2) on behalf of all current Oklahoma ADvantage Waiver and In-Home Supports Waiver recipients whose services are set to be eliminated by Defendants, effective December 1, 2017, and who are at significant risk of institutionalization as a result of Defendants' actions.

101. The class is so numerous that joinder of all members is impracticable. DHS recently reported that 21,147 individuals are served by ADvantage waivers and 1,482 individuals served by In-Home Supports for Adults waivers.[9]  The State has estimated that half these individuals (and thus in excess of 10,000) are at serious risk of institutionalization as a result of the arbitrary termination of these critical services.[10]

---

[9]http://www.okdhs.org/OKDHS%20PDF%20Library/Office%20of%20Communications/DHSBudgetWorkProgramfor$69MLossofFunding_ocom_10252017.pdf
[10]http://newsok.com/without-a-deal-10000-people-could-be-forced-into-nursing-homes/article/5569386

102.   All members of this class are subject to the same termination of waiver services, at the same time, and based on the same common decision.

103.   Each member of the class likewise received substantially the same notice of this common termination decision, as well as the class member's lack of any option or means to appeal or pursue alternative non-institutional services.

104.   There are questions of law and fact as to the permissibility of the Defendants' arbitrary policy of terminating waiver programs for Medicaid beneficiaries that are common to all members of the class.

105.   Common questions of law and fact predominate over questions affecting individual Class Members. These questions of law and fact common to members of the class include, but are not limited to:

a.   the fact that all Plaintiffs and Class Members receive Oklahoma Medicaid funded waiver services that will be terminated on December 1, 2017, due to the common action of DHS that applies to all of the Class Members,

b.   the fact that this termination places Plaintiffs and Class Members at significant risk of institutionalization,

c.   the fact that neither DHS nor OHCA has developed or offered alternative options or services to prevent all Plaintiffs and Class Members from being forced into institutionalization, and

d.   the determination of whether Defendants' actions violate federal law.

106.   Due to these and other common issues of law and fact, the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications, establishing incompatible rules of law for the provision of services to people with disabilities served by the waiver programs.

107.   Prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members which also would establish incompatible standards of conduct for the Defendants and could as a practical matter be dispositive of the interests of the other members or substantially impair or impede their ability to protect their interests.

108.   Defendant Lake's common termination of all Plaintiffs' and Class Members' waiver services without provision for any non-institutional alternatives has affected and will affect the class generally, thereby making appropriate final injunctive relief with respect to the class as a whole.

109.   Named Plaintiffs will fairly and adequately represent the interests of all members of the class. Specifically, they are current recipients of the ADvantage or In-Home Supports Waivers, were informed their waiver services would be terminated December 1, 2017, and are at risk of institutionalization without waiver services.

## CAUSES OF ACTION

## COUNT I: VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

110.   Plaintiffs reallege and incorporate herein by reference each and every allegation and paragraph set forth previously.

111.   Defendant Lake is Director of the Oklahoma Department of Human Services (DHS), which is a public entity under the ADA.

112.   Each Plaintiff is a "qualified individual with a disability" within the meaning of the ADA in that they (1) have a physical impairment that substantially limits one or more major life activities; (2) are capable of safely living in their homes with necessary services; and (2) meet the essential requirements for the Oklahoma Medicaid program. 42 U.S.C. § 12131(2).

113.   Defendant Lake's termination of the waiver services that Plaintiffs require in order to avoid institutional placements, and to remain in the integrated home settings appropriate to their needs, constitutes unlawful discrimination in violation of Title II of the ADA, 42 U.S.C. § 12132.

114.   Defendant Lake's agency (DHS) has arbitrarily implemented a policy to terminate Plaintiffs' critical waiver services without reassessment of need or the provision of replacement services, thereby placing Plaintiffs and Class Members at imminent risk of institutionalization in violation of the ADA's integration mandate.

115.   Defendants have utilized criteria and methods of administration that subject Plaintiffs and Class Members to discrimination on the basis of disability, including risk of unnecessary institutionalization, by including but not limited to, the following:

   a.   failing to properly assess for replacement services and supports that would enable Plaintiffs and Class Members to remain in the community;

   b.   failing to provide alternative waiver or replacement services needed to enable Plaintiffs and Class Members to remain in the community;

   c.   basing its decision to terminate the waiver programs solely on economic considerations not taking into account the assessed needs of the participants; and

   d.   allocating resources for institutional versus community long-term care contrary to the desires and needs of people with disabilities.

116.   In enacting the Americans with Disabilities Act, Congress found that "[i]ndividuals with disabilities continually encounter various forms of discrimination, including...segregation...." 42 U.S.C. § 12101(a)(5).

117.   Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

118. Regulations implementing Title II of the ADA make clear that the ADA requires that: "A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

119. The U.S. Supreme Court in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), held that the unnecessary institutionalization of individuals with disabilities is a form of discrimination under Title II of the ADA. In doing so, the Court interpreted the ADA's "integration mandate" to require that persons with disabilities be served in the community when: (1) community-based treatment is appropriate; (2) the individual does not oppose community placement; and (3) community placement can be reasonably accommodated. Id. at 607.

120. Defendants have arbitrarily terminated the waiver programs, subjecting Plaintiffs to discrimination on the basis of disability, by terminating Plaintiffs' waiver services and failing to assess the needs and provide alternative services to Plaintiffs to prevent their unnecessary institutionalization.

121. The *Olmstead* decision and ADA regulations mandate "when treatment professionals have determined that community placement is appropriate for disabled individuals, those individuals do not oppose the placement, and the provision of services would not constitute a "fundamental alteration," states are required to place those individuals in community settings rather than institutions."

*Fisher v. Oklahoma Health Care Authority,* 335 F.3d 1175, 1181-82 (10th Cir.

2003), citing *Olmstead v. L.C.* 527 U.S. at 601-03, 119 S.Ct. 2176.

122.   Defendants' actions thus violate Title II of the ADA.[11]

## COUNT II: VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 (29 U.S.C. § 794)

123.   Plaintiffs reallege and incorporate herein by reference each and every
allegation and paragraph set forth previously.

124.   Each Plaintiff is a "qualified person with a disability" within the meaning of
Section 504, because they (1) have physical and/or mental impairments that
substantially limit one or more major life activities; and (2) meet the essential
eligibility requirements for community-based services under Oklahoma's
Medicaid programs.

125.   Both Defendants conduct, operate, and/or administer programs of the
Oklahoma state Medicaid program, are recipients of federal funds, and therefore
are subject to the requirements of Section 504.

---

[11] According to U.S. Department of Justice Guidance, "budget cuts can violate the ADA
and *Olmstead* when significant funding cuts to community services create a risk of
institutionalization or segregation.  The most obvious example of such a risk is where
budget cuts require the elimination or  reduction of community services specifically
designed for individuals who would be institutionalized without such services.  In making
such budget cuts, public entities have a duty to take all reasonable steps to avoid placing
individuals at risk of institutionalization," see,
https://www.ada.gov/olmstead/q&a_olmstead.htm.

126.   Defendants' actions have placed Plaintiffs and Class Members at risk of unnecessary confinement in institutions, *i.e.,* nursing facilities, rather than the community, in order to obtain long-term care services, in violation of Section 504's integration mandate.

127.   Defendants have utilized criteria and methods of administration that subject Plaintiffs and Class Members to discrimination on the basis of disability, including risk of unnecessary institutionalization, by

   a.  failing to properly assess for replacement services and supports that would enable Plaintiffs and Class Members to live in the community,

   b.  failing to base service decisions on individualized needs assessments instead of purely economic concerns; and

   c.  allocating resources for institutional versus long-term care contrary to the desires and needs of people with disabilities.

128.   The denial of waiver services or any suitable alternatives that Plaintiffs require in order to avoid segregation in institutional placements and to remain in integrated home settings that are appropriate to their needs constitutes unlawful discrimination in violation of Section 504 of the Rehabilitation Act.

129.   Defendants have implemented a policy of administration that subjects Plaintiffs to discrimination on the basis of disability, including unnecessary institutional segregation, by failing to ensure that Plaintiffs and Class Members have access to

Medicaid-covered or state-funded waiver services that meet their needs in the community and/or requiring Plaintiffs to live in institutional settings in order to obtain the services they need.

130.   Section 504 of the Rehabilitation Act of 1973, on which the ADA is modeled, sets forth similar protections against discrimination by recipients of federal funds, such as the Defendants' agencies. 29 U.S.C. §§ 794-794a. These protections include the prohibition against unnecessary segregation of people with disabilities. Regulations implementing Section 504 require that a public entity administer its services, programs and activities in "the most integrated setting appropriate" to the needs of qualified individuals with disabilities. 28 C.F.R. § 41.51(d).

131.   Section 504's regulations prohibit recipients of federal financial assistance from utiliz[ing] criteria or methods of administration...(i) [t]hat have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap [or] (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to handicapped persons. 28 C.F.R. § 41.51(b)(3)(I); 45 C.F.R. § 84.4(b)(4).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and Putative Class Members respectfully request that this Court do the following:

1.   Certify this action as a class action;

2. Designate Plaintiffs as class representatives pursuant to Federal Rule of Civil Procedure 23, and designating Counsel for Plaintiffs as Counsel for the Class;

3. Declare that Defendants' policies as set forth above violate Plaintiffs' and Class Members' rights under the American with Disabilities Act and Section 504 of the Rehabilitation Act by, *inter alia:*

   a. Denying Plaintiffs and Class Members their entitlement to services in the least restrictive environment; and

   b. Discriminating against Plaintiffs and Class Members on the basis of disability by utilizing methods of administration, adopting and applying policies, and engaging in practices that result in unnecessary segregation and institutionalization.

4. Declare that Defendants' elimination of Plaintiffs' Medicaid skilled nursing and rehabilitation services provided through the waiver programs, without the provision of continuation services in community-based settings which are the most integrated setting appropriate to the needs of Plaintiffs and Class Members, together with conditioning the receipt of medically necessary Medicaid services on segregation in an institutional or non-community setting, violates laws which prohibit discrimination on the basis of disability, prohibit unjustified institutionalization and segregation, and which require Defendants to administer

their services and programs in the most integrated setting appropriate to the needs of the individual with disabilities, including:

   a.  The Americans with Disabilities Act (ADA), (42 U.S.C. §§12101-12213).

   b.  Section 504 of the Rehabilitation Act ("Section 504"), (29 U.S.C. §§794-794a).

5.  Grant a preliminary and permanent injunction enjoining Defendants, their officers, agents, employees, attorneys, and all persons who are in active concert or participation with them from violation of Plaintiffs' and Class Members' rights under the American with Disabilities Act and Section 504 of the Rehabilitation Act.

6.  Grant a preliminary and permanent injunction enjoining Defendant Lake, his officers, agents, employees, attorneys, and all persons who are in active concert or participation with him from terminating, reducing, or suspending Plaintiffs' or Class Members' waiver benefits or services, including Medicaid skilled nursing, physical and occupational therapy, and other services to which they are entitled, until such time as alternative community-based services are provided by Defendants for each Plaintiff and Class Member.

7.  Grant a preliminary and permanent injunction compelling Defendants, their officers, agents, employees, attorneys, and all persons who are in active concert or

participation with them to take all actions necessary within the scope of their authority to implement the above injunctions.

8. Maintain the injunctions above until such time as community-based, non-institutional skilled nursing, physical and occupational rehabilitation therapy, and other services are provided to the extent required under federal law and so as to ensure each Plaintiff and Class Member receives the services that meet their needs in the most integrated setting appropriate to their needs.

9. Award to the Plaintiffs costs and reasonable attorney fees pursuant to 42 U.S.C. § 1988.

10. Order such other relief as this Court deems just and equitable.

Respectfully Submitted,

____s/Brady Henderson_____,
Brady R. Henderson, OBA#21212
Amy N. Gioletti, OBA#30566
ACLU of Oklahoma Foundation
P.O. Box 1626
Oklahoma City, OK 73101
(405) 525-3831, (405) 524-2296 (fax)
bhenderson@acluok.org
agioletti@acluok.org

____s/Gary Taylor_____
Gary Taylor, OBA#8860
Joy Turner, OBA#18482
Oklahoma Disability Law Center
2915 N Classen Blvd # 300

*33*

Oklahoma City, Oklahoma 73106
(405) 525-7755
gary@okdlc.org
joy@okdlc.org
*Attorneys for Plaintiffs, and all others similarly situated*